## PEOPLE v. ERICSON.

(Schenectady County Court.   January 29, 1914.)

1. LICENSES (§ 40*)—REGULATIONS OF OCCUPATIONS AND EMPLOYMENTS—ORDINANCE—OFFENSES.

Under an ordinance of the city of Schenectady providing that no person not licensed as prescribed therein shall "take orders and deliver goods," an agent who had solicited orders for books for future delivery, but had not made the delivery, was not guilty of a violation, since the offense was not complete until a delivery was made.

[Ed. Note.—For other cases, see Licenses, Cent. Dig. §§ 79–83;  Dec. Dig. § 40.*]

2. LICENSES (§ 9*)—REGULATION OF OCCUPATIONS AND EMPLOYMENTS—ORDINANCES—CONSTRUCTION.

An ordinance of the city of Schenectady providing that no person not having license as prescribed shall hawk or peddle from any wagon, etc., in any of the streets of the city, nor "take orders or deliver goods from such orders" any goods, wares, merchandise, or other commodities, being in restriction of a common-law right to pursue a legitimate and innocent occupation, should be strictly construed.

[Ed. Note.—For other cases, see Licenses, Dec. Dig. § 9.*]

3. CONSTITUTIONAL LAW (§ 81*)—POLICE POWER—REGULATION OF OCCUPATIONS AND EMPLOYMENTS.

The state can regulate trades and occupations which are inherently dangerous and annoying to the community, or which pertain to the public service, or are affected by a public use; but it cannot prohibit such occupations as selling decent and wholesome literature, there being no question of the safety or welfare of the public involved.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 148; Dec. Dig. § 81.*]

4. CONSTITUTIONAL LAW (§ 230*)—HAWKERS AND PEDDLERS (§ 4*)—CLASS LEGISLATION—REGULATION OF OCCUPATIONS.

An ordinance of the city of Schenectady, making it unlawful for unlicensed persons to hawk or peddle, etc., in any of the streets of the city, or "take orders or deliver goods from such orders," except grocers, butchers, conducting their business from stores located in the city, any goods, wares, merchandise, or other commodities, was void as being an unlawful attempt to discriminate against nonresidents.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 687; Dec. Dig. § 230;*  Hawkers and Peddlers, Cent. Dig. §§ 7–9;  Dec. Dig. § 4.*]

5. COMMERCE (§ 67*)—INTERSTATE COMMERCE—MEANS OF REGULATION—SALE ON AGENT'S ORDERS—LICENSE.

An ordinance of the city of Schenectady prohibiting the taking of orders and delivering of goods therefrom without a license, being an exercise, not of the police power, but of the taxing power, when enforced against an agent, sent by a nonresident publisher to solicit orders in this state, imposes a tax upon interstate commerce in violation of the federal Constitution.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 111;  Dec. Dig. § 67.*]

Appeal from Police Justice of City of Schenectady.

O. B. Ericson was convicted of soliciting orders for books without a license, in violation of an ordinance of the City of Schenectady, and he appeals.   Reversed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Benjamin P. Wheat, of Saratoga Springs, and William E. Bennett, of Schuylerville, for appellant.

Alexander T. Blessing, Dist. Atty., of Schenectady, for the People.

NAYLON, J. This is an appeal by the defendant from a judgment of the Police Court of the City of Schenectady, rendered on the 17th day of June, 1912, convicting the defendant of a violation of section 6 of chapter 14 of the laws and ordinances of the city of Schenectady.

The defendant was arrested on a warrant sworn out by a police officer, charging him with a violation of said ordinance; the statement in the information being that the defendant, on the 14th day of June, 1912, took orders for books from house to house in the city of Schenectady, upon which said orders books were to be delivered at a later date.

The material part of the ordinance in question reads as follows:

"No person not having a license authorizing the same duly issued to him as hereinbefore provided, shall hawk or peddle or offer for sale from any wagon, sleigh, or other vehicle, or any portable contrivance, in any of the streets of the city of Schenectady, nor take orders and deliver goods from such orders, either with or without a vehicle, except grocers, butchers and bakers who conduct their business from stores located in the said city, any goods, wares, merchandise or other commodities, except kindling wood, charcoal, garden vegetables, berries, meats, fish, fruit, flowers, plants, poultry, and farm produce other than hay, straw, stalks, fodder and wood raised or grown upon the farm or premises of the person or persons offering it for sale, and who are residents of Schenectady county."

There is no dispute as to the material facts. The proof shows that the defendant, at the time of his conviction, was a resident of the state of Illinois, and that at the time of his arrest he was engaged in soliciting orders for a set of books known as the "The New Practical Reference Library," a work consisting of several volumes, which was printed and published at the latter place, by the Hanson-Bellows Company, a corporation organized under the laws of the state of Illinois and having its principal place of business in the city of Chicago. He was paid a salary as well as a commission on the orders that he took. The orders taken by him were sent to the Hanson-Bellows Company, and the books were thereafter to be shipped by the company from Chicago to Schenectady, where they were to be delivered by another agent of the company to the purchaser. Each set of books would be placed in a separate carton, with the name of the purchaser marked on the carton. The books were copyrighted and were so marked on the inside cover of every book. No claim was made that the books were not of a meritorious character. No deliveries were made by the defendant, himself.

Although I do not deem it material here, it appears that a Mr. Parmatier, the manager or supervising agent for the Hanson-Bellows Company, before sending the defendant out to commence his work in the city of Schenectady, applied to the mayor for a license, who stated that no license was necessary.

[1] The arrest of the defendant was premature. The ordinance for the violation of which the arrest was made prohibits "taking orders and delivering goods from such orders." It is not claimed that

the defendant delivered any orders. The information itself states that the plaintiff was soliciting orders to be delivered in the future. Assuming that the ordinance is not in violation of any constitutional right of the defendant, it is clear that to constitute the crime he had not only to take orders, but to deliver the goods as well.

[2] The ordinance being in restriction of a common-law right to pursue a legitimate and innocent occupation, it should receive a strict construction. Where one is to be charged with a penalty for violation of such an ordinance, his occupation must be shown to be clearly within the occupations aimed at. Village of Stamford v. Fisher, 140 N. Y. 187, 35 N. E. 500. In this case, at page 192 of 140 N. Y., it was held that a person who takes orders for goods for future delivery is not a hawker or peddler. Nor can taking orders and delivering goods from such orders be construed to mean taking orders alone.

In United States v. Ten Cases of Shawls, 2 Paine, 162, Fed. Cas. No. 16,448, it was held that in a penal statute the word "and" can never be construed to mean "or."

[3] The state has the undoubted right to regulate trades and occupations which are inherently dangerous and annoying to the community, or which pertain to the public service, or are affected by a public use; but such occupations as selling decent and wholesome literature may not be prohibited, for there is no question of the safety or welfare of the community involved. People v. Warden of City Prison, 157 N. Y. 166, 51 N. E. 1006, 43 L. R. A. 264, 68 Am. St. Rep. 763.

[4] While it is clear that the conviction under the ordinance in question was premature, there are other and more important grounds for the reversal of conviction in this case.

After a careful examination of the ordinance, I am satisfied that it violates the constitutional right of the defendant to engage in a perfectly lawful occupation.

In People v. Jarvis, 19 App. Div. 466, 46 N. Y. Supp. 596, a provision in the charter of the village of Norwich was held to be unconstitutional because it discriminated against nonresidents. Mr. Justice Herrick, in his concurring opinion in this case, says that the Legislature has no power to authorize village trustees to impose either a tax or a license fee upon nonresidents to which residents were not also subject, and that laws must not discriminate between persons lawfully, within their jurisdiction.

In Buffalo v. Reavey, 37 App. Div. 228, 55 N. Y. Supp. 792, and in City of Watertown v. Rodenbaugh, 112 App. Div. 723, 98 N. Y. Supp. 885, similar ordinances were held to be an invalid exercise of the public power.

[5] Moreover, the conviction of the defendant in this case was in direct violation of the exclusive right granted to the federal government to regulate commerce between the several states. Brennan v. Titusville, 153 U. S. 288, 14 Sup. Ct. 829, 38 L. Ed. 719; Caldwell v. North Carolina, 187 U. S. 622, 23 Sup. Ct. 229, 47 L. Ed. 336; Rearick v. Pennsylvania, 203 U. S. 507, 27 Sup. Ct. 159, 51 L. Ed. 295; Vance v. Vandercook Co., 170 U. S. 438, 18 Sup. Ct. 674, 42 L. Ed.

1100; People v. Warden of City Prison, 157 N. Y. 116, 51 N. E. 1006, 43 L. R. A. 264, 68 Am. St. Rep. 763.

In Brennan v. Titusville, supra, the plaintiff in error was convicted of violation of an ordinance of the city of Titusville. Brennan was the agent of one J. A. Shepard, a manufacturer of picture frames and maker of portraits, residing in Chicago, where he conducted his manufactory and place of business. In the prosecution of the business, he employed agents who, under his direction solicited orders for pictures and picture frames in the state of Pennsylvania, and in other states. These agents went from house to house exhibiting samples of pictures and picture frames and solicited orders. These orders were forwarded to Shepard in Chicago, from which place the goods were manufactured and shipped. It was held that the ordinance which prohibited this work was in violation of the exclusive power of Congress to regulate commerce between the several states.

In the case of Caldwell v. North Carolina, Caldwell was arrested for a violation of an ordinance which provided that:

"Every person engaged in the business of selling or delivering picture frames, pictures, photographs or likenesses of the human face in the city of Greensborough, whether an order for the same shall have been previously taken or not, unless said business is carried on by the same person in connection with some other business for which a license has already been paid to the city, shall pay a license tax of $10 for each year," etc.

On appeal it was held that the ordinance was an attempt to interfere with and to regulate commerce, and as such was invalid as to an agent or a corporation residing outside of the state.

Under the foregoing authorities, I am convinced that the arrest and conviction of Ericson was not only premature, but that the ordinance itself is an unlawful attempt to discriminate between residents of this state, and that the conviction in this case was also in violation of the exclusive power given to the federal government to regulate commerce between the several states.

Order of reversal should be prepared accordingly.